| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL X | | |
| BRENDA LIZ GONZÁLEZ OCASIO<br><br>Apelada<br><br><br>V.<br><br><br>MIGDALIA LIZ GONZÁLEZ OCASIO<br><br>Apelante | KLCE202401327 | *Certiorari* acogido como ***Apelación*** procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.:<br>CA2022CV00594<br><br>Sobre:<br>Desahucio<br>Vía Ordinaria |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 24 de enero de 2025.

El 9 de diciembre de 2024, compareció ante este Tribunal de Apelaciones, la señora Migdalia González Ocasio (en adelante, parte apelante), por medio de *Certiorari*, el cual se acogió como *Apelación* mediante *Resolución* emitida por este Tribunal el 9 de diciembre de 2025.  La parte apelante solicita que, revisemos la *Sentencia Parcial* emitida y notificada el 23 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Carolina. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por la señora Brenda L. González Ocasio (en adelante, parte apelada).

Por los fundamentos que adelante se esbozan, se *confirma* el dictamen apelado.

**I**

El recurso de marras tiene su génesis en una *Demanda* sobre desahucio por la vía ordinaria, instada el 2 de marzo de 2022, por la señora Brenda L. González Ocasio.  En apretada síntesis, la parte

apelada alegó que, la propiedad en controversia, ubicada en la dirección Calle 5 Bloque HI 68 Urbanización Metrópolis, Carolina PR 00987, perteneció en pleno dominio al fenecido señor Lucas J. Ocasio Ocasio (en adelante, señor Ocasio Ocasio) y a la fenecida señora Carmen L. Maldonado Rodríguez (en adelante, señora Maldonado Rodríguez y abuelos de las partes). Sostuvo que, en fecha desconocida, la parte apelante se mudó a dicha propiedad. Alegó que, en el año 2010, la señora Maldonado Rodríguez y el señor Ocasio Ocasio le donaron la propiedad en cuestión a la parte apelada mediante escritura de donación número uno (1), del día 25 de noviembre de 2010 ante el notario Sixto Díaz Saldaña, y que, en el año 2016 se expidió el correspondiente relevo de donación. De igual manera, arguyó que, desde que la propiedad fue donada a la parte apelada, esta le había requerido a la parte apelante en múltiples instancias que desalojara la propiedad y que, esta última se negaba a hacerlo. De las alegaciones de la *Demanda*, también se desprende que, la parte apelante sin notificación ni consentimiento de la parte apelada había realizado mejoras en la propiedad. Aseguró, además, que, la parte apelante se ha lucrado económicamente de la propiedad en la medida en que tiene una tienda en la que vendía dulces y un apartamento en alquiler, y que, no paga canon de renta alguno. Asimismo, alegó que, la parte apelante no era poseedora de buena fe, ya que es de su conocimiento que no tiene título sobre la propiedad. En su petitorio, la parte apelada aseguró que, la señora Migdalia González Ocasio realizó arreglos en la propiedad sin notificarle y sin su consentimiento. A tales efectos, solicitó el desahucio de la parte apelante, la imposición de un pago razonable por el dinero que ha dejado de recibir, el pago de costas, intereses y honorarios de abogado.

En respuesta, la parte apelante presentó la *Contestación a la Demanda.* En primer lugar, sostuvo que, se había mudado a la

propiedad hace más de veintidós (22) años con la anuencia del señor Ocasio Ocasio y de la señora Maldonado Rodríguez, quienes adquirieron la propiedad con la intención de transferir su titularidad a la señora Migdalia González Ocasio. En su moción, la parte apelante alegó que, la donación de la propiedad había sido producto de coacción por parte de la señora Brenda González Ocasio hacia sus abuelos. Sostuvo, además, ser "edificante de buena fe", y que, debido al paso del Huracán María, la propiedad sufrió daños severos que requirieron reparaciones extraordinarias. Adujo que, en el 2018 la parte apelada presentó una demanda de desahucio en su contra que fue desestimada. De igual manera, indicó que, la parte apelada se negaba a pagar el justo valor por las mejoras y mantenimientos realizados a la propiedad.

A su vez, la parte apelante presentó la *Reconvención*. En esencia, alegó que, la parte apelada se había negado a pagarle los gastos incurridos en unas alegadas mejoras realizadas en la propiedad. Asimismo, arguyó que, debido a la incertidumbre sobre su derecho de posesión y las exigencias de desalojar la propiedad, había sufrido daños emocionales y mentales, angustias, desosiego, ansiedad y depresión ascendientes a la cantidad de veinte mil dólares ($20,000.00). A estos efectos, solicitó al foro de primera instancia que declarara No Ha Lugar la *Demanda*, declarara Con Lugar la *Reconvención*, ordenara el pago de las mejoras alegadas y condenara a la parte apelada a pagar los daños alegadamente causados.

Posteriormente, la parte apelada presentó la *Demanda Enmendada*. En esta, incluyó que, si bien era cierto que se había presentado otro pleito sobre desahucio, fue instado debido a que los herederos del señor Ocasio Ocasio habían presentado una solicitud de partición de herencia y la propiedad en cuestión había sido incluida como parte del caudal. En ese entonces, el foro de primera

instancia determinó que la controversia debía ser tramitada por la vía ordinaria. Sostuvo, además, que, los herederos del señor Ocasio Ocasio obtuvieron una sentencia por estipulación en relación al caudal de este. Por lo que, entiende que la propiedad debe ser puesta en posesión de los herederos. Reiteró que, procedía el desahucio de la parte apelante sin que la parte apelada tuviese que pagarle cantidad de dinero alguna.

El 12 de mayo de 2022, la parte apelada presentó la *Contestaci[ó]n a Reconvenci[ó]n*. Mientras que, la parte apelante presentó la *Contestaci[ó]n a Demanda Enmendada y Reconvenci[ó]n*. En esta última, la parte apelante alegó que, existía un conflicto de título con relación a la posesión de buena fe de la propiedad, y el valor de la reconstrucción y reparaciones que le había realizado la parte apelante. Aseguró que, las reparaciones necesarias que realizó tuvieron un costo aproximado de sesenta mil dólares ($60,000.00). Alegó que, dichas reparaciones fueron llevadas a cabo con la anuencia del señor Ocasio Ocasio y la señora Maldonado Rodríguez, quienes eran los dueños de la propiedad.

Por otro lado, la parte apelada presentó la *Contestaci[ó]n a Reconvenci[ó]n*. Por medio de esta, arguyó que, desconocía si la parte apelante le había realizado mejoras a la propiedad y que, de haberlas realizado, estas habían sido sin su consentimiento. Igualmente, sostuvo que, la parte apelante no era constructora de buena fe, debido a que esta conocía que no era dueña de la propiedad y que sus abuelos le donaron la propiedad a la parte apelada.

Así las cosas, el 20 de septiembre de 2023, la parte apelada presentó la *Moci[ó]n de Sentencia Sumaria*. En su moción, propuso veintiún (21) hechos que, a su juicio, no se encontraban en controversia. Argumentó que, la parte apelante no tenía derecho alguno por las mejoras debido a que era poseedora de mala fe y no

ostentaba un título sobre la propiedad. Sostuvo que, procedía el desahucio.

Por otro lado, la parte apelante presentó la *Oposición a Moción de Sentencia Sumaria*. Arguyó que, existían varios hechos que se encontraban en controversia, y que, por ello, no procedía que se resolviera la controversia por la vía sumaria.

Finalmente, el Tribunal de Primera Instancia, emitió la *Sentencia Parcial* cuya revisión nos ocupa, en la cual consignó los siguientes hechos incontrovertidos:

### HECHOS INCONTROVERTIDOS[1]

1. La parte demandada reside en Calle 5 HI-68, Metrópolis, Carolina, Puerto Rico. Deposición Migdalia González, Página 9, Líneas 9-13.

2. Los abuelos de las partes compraron la propiedad el día 30 de noviembre de 2006 por la cantidad de $135,000.00 mediante la escritura 136, ante el notario José L. Iglesias Irizarry. Véase Anejo a la Entrada 48 de SUMAC.

3. Los abuelos suscribieron escritura de donación, escritura número uno (1) del día 25 de noviembre de 2010 ante el notario Sixto Díaz Saldaña, donde le donan la propiedad a la demandante, Brenda González Ocasio. Véase Anejo a la Entrada 27 de SUMAC.

4. Para el año 2018 la parte demandante Brenda González Ocasio present[ó] demanda de desahucio en el caso CA2018CV00526. Sentencia que se declaró No Ha Lugar porque la parte demandada aleg[ó] las mejoras a la propiedad por lo que este asunto no se podía resolver en una demanda de desahucio por la vía sumaria.

5. Los codemandantes (excepto Brenda González Ocasio) son herederos en el caso KAC2016-0794 (508) ante el Tribunal de San Juan, donde se dictó sentencia el día 6 de junio de 2019. Esta propiedad es parte del caudal que se debe vender y consignar el monto de la venta en el Tribunal. Véase Anejo en Entrada 29 de SUMAC.

6. La parte demandada conoce que la casa donde vive no le pertenece y que está a nombre de Brenda González Ocasio. Véase Deposición Migdalia González, Página 9, Líneas 21-23[.]

---

[1] Los hechos enumerados del 1 al 20 fueron admitidos por la parte demandada en su Oposición.

7. Cuando se compró la propiedad esta tenía tres cuartos y dos baños. Véase Deposición Migdalia González, Página 10, Líneas 13-16.

8. La parte demandada le pagaba a su abuelo $300.00 dólares de renta en efectivo. La casa no se tas[ó] cuando el abuelo la compró. Véase Deposición Migdalia González, P[á]gina 12, Líneas 4-25 y P[á]gina 13, Líneas 1-3.

9. La casa no se tasó cuando el abuelo la compró.

10. La parte demandada siempre tuvo el conocimiento de que la casa era propiedad de sus abuelos. Véase Deposición Migdalia González, P[á]gina 26, Líneas 20-24[.]

11. Los pagos del CRIM están a nombre de Brenda González, otros a nombre de Migdalia González, otros a nombre de Lucas Ocasio y otros se desconoce quién los pag[ó]. Véase Deposición Migdalia González, P[á]gina 32, Líneas 11-25, Página 33 a P[á]gina 40, Líneas 1-25 y P[á]gina 41, Línea 1, Página 43, Líneas 10-25.

12. Desde que el abuelo falleció la demandada no paga renta. Véase Deposición Migdalia González, Página 43, Líneas 23-25, Página 44, Línea 1-7[.]

13. La demandada conoce que la propiedad está a nombre de Brenda González Ocasio. Deposición Migdalia González, Página 46, Líneas 3- 19[.]

14. La demandada conoce que la propiedad es de los herederos de su abuelo. Véase, Deposición Migdalia González, Página 46, Líneas 20- 25, Página 47, Líneas 1-9[.]

15. La parte demandada construyó un apartamento - estudio que no termin[ó] y que ya no existe porque el huracán María le llevó el techo de zinc. Véase Deposición Migdalia González, Pagina 53, Líneas 22- 25, P[á]gina 55, Líneas 2-25, Página 56, Líneas 1-25[.]

16. La parte demandada construyó un cuarto en la marquesina. Véase, Deposición Migdalia González, Página 69, Líneas 10-24.

17. Este cuarto era un extra para ayudar a personas, pero actualmente cobra $100.00 quincenales. Véase Deposición Migdalia González, Página 70, Líneas 11- 25, Página 71, Líneas 1-25, Página 72, Líneas 1-15[.]

18. La parte demandada construyó un baño adicional, este segundo baño en su cuarto. Remodeló el baño que tenía la casa cuando se compró. Véase, Deposición Migdalia González, Página 76, Líneas 3- 22[.]

19. La parte demandada hizo tratamiento de sellado de techo. Deposición Migdalia González, Página 77, Líneas 14-21[.]

20. La parte demandada pintó la propiedad. Deposición Migdalia González, Página 78, Líneas 21-25, Página 79, Líneas 1-7[.]

21. La parte demandada es poseedora de mala fe pues conoce que no posee un t[í]tulo en propiedad, que la propiedad no le pertenece y así ha permanecido en la propiedad sin pagar canon de renta.

De igual manera, determinó que existían algunos hechos en controversia respecto a las reparaciones realizadas en la propiedad, y por ello, determinó lo siguiente:

En el presente caso procede el desahucio. Sin embargo, existe controversia en si proceden o no la devolución de las reparaciones necesarias realizadas a la propiedad que consistieron en sellado de techo, instalación de puertas, reparación de la verja, reparación e instalación de rejas, remoción de ventanas defectuosas e instalación de ventanas nuevas, lavado a presión de toda la casa, remoción de la pintura, pintura del inmueble y reparación del baño existente e instalación de aparatos sanitarios y reparaciones eléctricas. Para ello es necesario la celebración de una vista evidenciaria que permita determinar si fue o no una reparación necesaria y su valor. De igual forma[,] procede determinar el reembolso por los pagos realizados -de probarse – al CRIM. Además, la arrendataria vivió la propiedad sin pagar canon de renta alguno, luego del fallecimiento de su abuelo, por lo que también procede determinar el canon de renta que adeuda a los herederos miembros de la sucesión.

Además, el foro *a quo* dispuso en su *Sentencia Parcial*:

Por los fundamentos antes expuestos, se declara HA LUGAR la Moción de Sentencia Sumaria en cuanto a la procedencia del desahucio y que la demandada es poseedora de mala fe por lo que no procede el pago de las mejoras. No obstante, se señala una vista evidenciaria para dilucidar los gastos necesarios en los que incurrió la demandada, los créditos pendientes y los cánones de arrendamiento adeudados, para el 10 de diciembre de 2024 a las 2:00pm por videoconferencia. Se ordena a las partes presentar moción informativa desglosando la prueba testifical y documental que interesan utilizar incluyendo las direcciones de correo electrónico para enviar el enlace para conectarse v[í]a zoom.

Se conceden 20 días para presentar la moción informativa.

Este Tribunal determina expresamente que no existe razón para posponer el que se dicte Sentencia Parcial hasta la resolución total del pleito y se ordena expresamente que se registre y notifique la presente Sentencia Parcial de Conformidad con lo provisto en la Regla 42.3 de Procedimiento Civil.

En desacuerdo con lo resuelto, la parte apelante presentó la *Moci[ó]n de Reconsideraci[ó]n*. Mientras que, la parte apelada presentó la *R[é]plica a Moci[ó]n sobre Reconsideraci[ó]n*. El Tribunal de Primera Instancia, mediante *Resolución* declaró No Ha Lugar la reconsideración presentada por la parte apelante.

Aún inconforme con la determinación del foro *a quo,* el 9 de diciembre de 2024, compareció ante este foro apelativo la parte apelante mediante recurso de apelación, en el que esbozó el siguiente señalamiento de error:

Erró el TPI al resolver que la demandada es **poseedora de mala fe** de la propiedad en controversia por lo que no procede el pago de las mejoras que esta ha realizado en la propiedad.

El 8 de enero de 2025, la parte apelada incoó su oposición al recurso en escrito intitulado *Apelación*.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II**

***A. Sentencia Sumaria***

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio.[2] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022); *Serrano Picón v. Multinational Life Ins.,* 212 DPR 981 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Birriel Colón v. Econo y Otros*, 2023 TSPR 120, 213 DPR ___ (2023); *Banco Popular de Puerto Rico v. Cable*

---

[2] *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021); *Rosado Reyes v. Global Healthcare,* 205 DPR 796, 808 (2020); *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622 (2022).

*Media of Puerto Rico, Inc. y otro*, 2025 TSPR 1 (2025). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015).

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales.[3] *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71 (2022); *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, supra. Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13. De la prueba adjunta a la solicitud de sentencia sumaria, deberá surgir preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otros*, supra.

Cónsono con esto, en el pasado el Tribunal Supremo de Puerto Rico ha afirmado que -utilizado ponderadamente- el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo

---

[3] *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 662-663 (2017); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 676 (2018).

que implica la celebración de un juicio en su fondo. Véase *Carpets & Rugs v. Tropical Reps.,* 175 DPR 615 (2009); *Padín v. Rossi,* 100 DPR 259 (1971); *Pérez Vargas v. Office Depot,* 203 DPR 687 (2019).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN,* supra, pág. 14.

Cumplidos estos requisitos, el Tribunal Supremo de Puerto Rico expresó además en *Pérez Vargas v. Office Depot,* supra, pág. 699, que el inciso (e) de la Regla 36.3 establece lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte

contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3 (e).

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14; *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992.

En armonía con la normativa reseñada, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones *Birriel Colón v. Econo y Otros*, supra; *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, supra; *Ramos Pérez v. Univisión*, supra, págs. 215-216. Las meras afirmaciones no bastan. *Íd.* "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 15. También, deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan

estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.*

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra,* se podrán considerar como admitidos y se dictará la Sentencia Sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

En cuanto a la revisión de las sentencias sumarias, el foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *González Meléndez v. Mun. San Juan,* supra. Nuestro Máximo Foro ha sido claro en que, [l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otros*, supra. De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Íd. Serrano Picón v. Multinational Life Ins.*, supra, pág. 993; *Meléndez González et al. v. M. Cuebas*, supra, pág. 116.

## B. Desahucio

Respecto a la acción de desahucio, nuestro Máximo Foro ha expresado que esta es "el mecanismo que tiene el dueño o la dueña de un inmueble para recuperar la posesión de hecho de una propiedad, mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna". *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020). El desahucio puede ser solicitado mediante un proceso sumario u ordinario. *Adm. Vivienda Pública v. Vega Martínez,* 200 DPR 235, 240 (2018).

Nuestro Código Civil, dispone que, "la persona con derecho a poseer un bien tiene acción para promover el juicio de desahucio contra cualquier poseedor sin derecho a poseer". Art. 725 del Código Civil, 31 LPRA sec. 7863.

El Código de Enjuiciamiento Civil es el cuerpo legal que articula las normas vigentes sobre esta acción. 32 LPRA 2821, *et seq.* De dicha disposición legal se desprende que, de ordinario, la acción de desahucio se tramita sumariamente, pues el Estado tiene un interés en atender con agilidad el reclamo de una persona dueña de un inmueble que ha sido impedida de ejercer su derecho a poseer y disfrutar de su propiedad. *SLG Ortiz-Mateo v. ELA*, 211 DPR 272 (2023); *Cooperativa v. Colón Lebrón, supra,* pág. 820; *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 9 (2016). No obstante, el desahucio puede ser solicitado mediante un proceso sumario u ordinario. *Adm. Vivienda Pública v. Vega Martínez,* supra, pág. 240; *ATPR v. SLG Volmar-Mathieu*, supra, pág. 10. El objetivo de la acción de desahucio es recuperar la posesión de hecho de un bien inmueble. *Íd.* Esta acción es un medio para recobrar la cosa inmueble arrendada, más no para terminar el arrendamiento. *Mora Dev. Corp. v. Sandín*, 118 DPR 733 (1987).

Cabe señalar que, una acción de desahucio en precario, no puede prosperar cuando existe un conflicto de título entre el demandante y el demandado. *Martínez Santiago v. Dalmau Andrades*, 93 DPR 191, 193 (1966). El conflicto de título únicamente puede existir "cuando el demandado opone un título de dominio que tienda a justificar que la posesión en que se halla no es la del arrendatario, administrador, custodio del inmueble o lo disfrute en concepto de precarista, es decir, sin título, por la tolerancia del dueño y sin satisfacer renta o merced alguna." *Íd.* Una mera alegación de título, desprovista de prueba, es insuficiente para derrotar una acción de desahucio. *Íd.*

### C. La Posesión

El Código Civil de Puerto Rico, define la posesión como la tenencia de una cosa o el disfrute de un derecho por una persona. Art. 703 del Código Civil de Puerto Rico, 31 LPRA sec. 7821. Existen dos tipos de posesión, que son: posesión de buena fe y posesión de mala fe. La persona poseedora de buena fe es la que ignora que en su título o modo de adquirir existe vicio que lo invalida. Mientras que, es poseedora de mala fe aquella persona que se halla en el caso contrario. Art. 710 del Código Civil de Puerto Rico, 31 LPRA sec. 7828.

En lo que respecta a los gastos en mejoras de puro lujo o recreo, nuestro ordenamiento jurídico dispone que, estos "no *son abonables*, pero el poseedor puede llevarse los objetos en que fueron invertidos, si la cosa no sufre deterioro y si el que vence en la posesión no prefiere quedarse con ellos, abonando al poseedor de buena fe el valor actual de lo gastado, y al poseedor de mala fe, ese valor o el que tiene en el momento de entrar en la posesión, a elección del vencedor." Art. 729 del Código Civil, 31 LPRA sec. 7874.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En el recurso que nos ocupa, la parte apelante nos plantea que el Tribunal de Primera Instancia incidió al determinar que, la señora Migdalia González Ocasio era poseedora de mala fe de la propiedad en controversia, por lo que no procede el pago de las mejoras que esta había realizado en la misma.

Adelantamos que, no le asiste la razón. Veamos.

En el ejercicio de nuestra función revisora nos corresponde: 1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como

su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[4].

De un ponderado análisis del expediente ante nuestra consideración, surge que, la parte apelada, en su solicitud de sentencia sumaria, cumplió sustancialmente con las formalidades dispuestas por la Regla 36 de Procedimiento Civil, *supra*. Sin embargo, la parte apelante no cumplió con algunas formalidades dispuestas en la Regla 36 de Procedimiento Civil, *supra*, en la medida en que no incluyó una indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecían esos hechos, así como de cualquier otro documento admisible en evidencia que se encontrara en el expediente del tribunal.[5]

En cumplimiento con la normativa vigente sobre la sentencia sumaria, evaluamos de *novo* las determinaciones de hechos esbozadas por el Tribunal de Primera Instancia y las acogemos por no encontrarse en controversia.

Tanto del expediente, como de las determinaciones de hechos, surge que, los abuelos de las partes suscribieron una escritura de donación el 25 de noviembre de 2010, donde le donaron la propiedad a la señora Brenda González Ocasio. Este hecho es hartamente conocido por la señora Migdalia González Ocasio, y así esta lo ha

---

[4] *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 679.
[5] *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 15.

reconocido. Es decir, la parte apelante conoce que la propiedad se encuentra a nombre de la parte apelada.[6] Además, es de su conocimiento que, la propiedad forma parte del caudal hereditario del señor Ocasio Ocasio[7]. Aun en conocimiento de lo anterior, la señora Migdalia González Ocasio construyó un apartamento/estudio. Respecto al mencionado apartamento/estudio, la señora Migdalia González Ocasio expresó que ya no existía debido a que el Huracán María lo había destruido. Asimismo, respondió que, este no constituía una mejora a la propiedad.[8] De igual manera, surge de las determinaciones de hechos que, la parte apelante reconoció que construyó un cuarto en la marquesina, y un baño adicional.

Nuestro ordenamiento jurídico dispone que, "[s]e reputa poseedora de buena fe a la persona que ignora que en su título o modo de adquirir existe vicio que lo invalida. Se reputa *poseedora de mala fe a la persona que se halla en el caso contrario*".[9] (*Énfasis nuestro*).

Como bien resolvió la primera instancia judicial, la parte apelante es poseedora de mala fe, puesto que, aun conociendo que carecía de título sobre la propiedad, y que, la parte apelante es la dueña, y quien le ha solicitado desalojarla, ha continuado residiendo en la misma sin pagar canon de renta alguno.

Por otro lado, nuestro Código Civil dispone que, los gastos en mejoras de puro lujo o recreo, no son abonables.[10] Inclusive, dispone también que, cuando se trate de un arrendatario, este no puede exigir que se le devuelva lo que ha pagado en mejoras útiles, ni de lujo que haya realizado en el bien arrendado.[11]

---

[6] Véase deposición de 12 de junio de 2023 (deposición) pág. 9, líneas 21-23; pág. 46, líneas 3- 19.
[7] Véase deposición pág. 46, líneas 20-25; pág. 47, líneas 1-9.
[8] Véase deposición pág. 56, líneas 1-15.
[9] Art. 710 del Código Civil, 31 LPRA sec. 7828.
[10] Art. 729 del Código Civil, 31 LPRA sec. 7874.
[11] Art. 1347 del Código Civil, 31 LPRA sec. 10163.

El apartamento/estudio, el cuarto adicional y el baño construido constituyen mejoras de lujo, no necesarias. Por lo tanto, conforme al derecho vigente, no procede el pago de dichas mejoras.

Es por lo que, no incidió el foro *a quo* al resolver que la parte apelante es poseedora de mala fe y que no procede el pago de las mejoras realizadas en la propiedad, por ser mejoras por puro lujo.

**IV**

Por los fundamentos que anteceden, se *confirma* el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones